Argued and submitted December 9, 1980, affirmed April 6, 1981

GOURLEY,
*Appellant,*
*v.*
O'DONNELL,
*Respondent,*

(No. 76-06-7641, CA 18225)

626 P2d 367

David C. Glenn, Madras, argued the cause and filed the brief for appellant.

William D. Cramer, Burns, argued the cause for respondent. With him on the brief was Cramer & Pinkerton, Burns.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from a circuit court "Judgment and Decree" holding that the lease agreement between plaintiff and defendant O'Donnell[1] was legally terminated for nonpayment of rent and taxes and declaring that plaintiff was not entitled to exercise the option to purchase stated in the lease. Plaintiff contends on appeal: 1) that the option agreement is enforceable as a separate agreement and is not precluded by virtue of the lease termination; 2) that defendant has been unjustly enriched by the improvements plaintiff made to the property to render it arable and, therefore, a constructive trust should be imposed to require payment of the value of those improvements; and 3) that he should be awarded damages for conversion of his trailer and irrigation equipment which were allegedly used by Mr. Wells, a subsequent tenant of defendant, with defendant's permission.

■ A threshold question in this case is the nature of the trial court's "Judgment and Decree," that is, was the judgment entered as a "summary judgment" (as the trial court's order labels it) because defendant was entitled to judgment as a matter of law, or was it intended as a judgment on a stipulated record? If the former, there is a clear dispute of fact in the evidence as to the existence and terms of some kind of arrangement between defendant and Wells for the latter to farm the property using plaintiff's trailer house and irrigation equipment. The trial court should therefore have denied summary judgment, at least on the conversion claim, because of the existence of a material issue of fact. ORCP 47C.

The confusion arises as follows: Defendant filed a motion for summary judgment accompanied by the affidavits of her attorney and a bank loan officer which are discussed at length below in the summary of facts. Plaintiff submitted a counter-affidavit setting forth his version of the case. The parties then filed a written stipulation which reads in relevant part:

---

[1] Defendant Gourley is the former wife of plaintiff. The Gourleys were divorced after the events at issue here. In that proceeding, plaintiff was awarded any beneficial interest of the parties in the land at issue here. Ms. Gourley was joined as a nominal defendant and filed no appearance either here or in the trial court.

"* * * Plaintiff in his Second Cause of Action sets forth a claim for unjust enrichment or implied trust. Plaintiff and Defendant agree that the Affidavit submitted by the parties hereto pursuant to the summary judgment proceedings shall constitute the testimony which would be elicited regarding this issue and that the court may base its decision on the Affidavits submitted by the parties."

With respect to the conversion claim, the stipulation reads:

"* * * The parties agree that the Court may make a ruling based upon the Affidavits of the parties submitted hereto pursuant to the summary judgment proceeding * * *."

Finally, the stipulation states:

"The Plaintiff and Defendant * * * agree that based upon the Stipulation, and upon the Defendant's * * * Motion for Summary Judgment heretofore filed, all matters raised by this Stipulation in the pleadings of the parties will be resolved by Summary Judgment proceedings. In this connection it is agreed that the evidence submitted by the parties for that decision shall constitute [sic - consist of] the [affidavits previously referred to]."

The stipulation, which was prepared by plaintiff, was amended by interlineation by defendant, who added the following:

"Both parties reserve right to present evidence in affidavit form or otherwise on any question of damages or amount of attorney fees."

The trial court order, as mentioned, refers to the parties' "agreement for summary judgment" but makes no mention of the absence of issues of material fact or other language typically found in summary judgment orders.

In his brief, plaintiff proceeds under the apparent assumption that the court reached its decision by fully weighing the evidence. He argues the evidence with respect to the trial court's apparent resolution of the dispute as to defendant's arrangement with Wells. At oral argument, he reiterated that position. Defendant in her brief addresses only plaintiff's first assignment of error, contending that the unjust enrichment claim and the conversion claims would need to be tried if we reverse the judgment, which declares that plaintiff forfeited any rights he had to exercise the option. To the extent defendant reserved her right

to present evidence with respect to damages on those two claims, that assertion may be correct.

In any case, we hold that the parties intended to try the liability aspects of plaintiff's three claims to the court on a stipulated record, and we treat the trial court's judgment accordingly. If the parties had intended to obtain a ruling on defendant's motion for summary judgment, there would have been no reason to enter into an agreement to permit such a proceeding. It is clear from the passage quoted above with respect to the unjust enrichment claim that a trial on a stipulated record was intended on that claim, and we conclude that a similar trial was intended with respect to the other two causes.

With the procedural matter disposed of, the relevant facts are as follows:

The parties entered into a four-year written lease on March 29, 1976, under which plaintiff was entitled to develop defendant's 326 acre parcel into irrigable farmland and raise hay thereon. Plaintiff was to pay annual rent of $2,000 and pay the taxes. In addition, plaintiff was to fence in the entire parcel, clean the well and install a pump of certain capacity. The lease provided:

> "It is agreed that said fence and pump will not be removed from the premises after installation and will be fixtures to the property and go with the land upon termination of the lease."

The lease further provided that plaintiff would have an option to purchase the land at any time before expiration of the lease on July 1, 1980, for $63,293, with a down payment of $11,293 and the balance payable by March 1, 1986, in annual installments. In the event plaintiff were to exercise the option before 1980, the lease provided that a credit of $4,321 per year against the total purchase price be given for each year the option was exercised in advance of 1980. Plaintiff averred in his affidavit that the reason the transaction was structured as a lease-option was because he needed all his capital to make improvements and get his crops in and therefore needed to make reduced payments until the operation became profitable.

On May 24, 1979, defendant terminated the lease for failure of plaintiff to make the 1979 rent payment and

pay the 1978 taxes. Plaintiff apparently quit the property without contest. Thereafter, a third party named either Durwin Winward or Darwin Wells took possession of the property and farmed it. He lived in plaintiff's trailer house and used plaintiff's irrigation equipment. Although plaintiff contends, as the basis of his claim for conversion, that Wells is using the property with the authorization of defendant, he stipulated that he had no evidence of any specific agreement between defendant and Wells. Defendant contends that there is no firm agreement between herself and Wells. She averred that Wells told her that he was farming the property and had deposited $40,000 in escrow for purchase of plaintiff's interest in the property on plaintiff's representation that he was the owner. That Wells and plaintiff had engaged in some type of contractual negotiations was confirmed by plaintiff's attorney in a letter to defendant.

Defendant submitted the affidavit of her attorney which stated in part:

"In view of the apparent substantial investment which Winward (Wells) had made in farming the property for 1979, Mrs. O'Donnell agreed that he could continue to do so, provided that he supply the irrigation equipment (which he represented he was purchasing from Gourley), and pay a reasonable rental. It was agreed that he would pay $4,000.00 in cash rental for 1979, with the prospect of entering a lease to cover future years. However, no rent has ever been paid for 1979."

The affidavit further averred that defendant had never claimed any interest in the trailer and irrigation equipment nor made personal use of either. Defendant agreed to permit plaintiff to remove the equipment at any time.

Defendant submitted a second affidavit from an officer at the bank where plaintiff had secured a loan for purchase of the irrigation equipment. That affidavit stated that the loan was delinquent since June 7, 1979. The officer further stated that defendant, to his knowledge, had never claimed any interest in the irrigation equipment.

Plaintiff, in his affidavit, states that he complied fully with the lease in making the various improvements required thereby and had expended over $76,000 in loans

and personal savings in the process of converting the land to farmland. He claimed that he had no agreement with Wells.

The trial court found a violation of the lease agreement and declared it properly terminated. At the time the lease was breached, plaintiff had not exercised his option to purchase and the court held that the option was terminated as part of the lease. The court concluded that the parties intended the fence, well improvements and pump to become part of the land and found no unjust enrichment. It ordered defendant to permit plaintiff to remove his irrigation equipment and trailer house. We affirm.

■■■ The first assignment of error presents the question of whether the option survives the rightful termination of the lease agreement for nonpayment of rent. The lease states that rental for the property shall be $8,000, payable in amounts of $2,000 per year for the four-year term. No separate consideration is stated for the option. An option may be granted in a lease and is supported by the consideration which supports the lease agreement itself. *Jones v. Kelley,* 48 Or App 395, 398, 616 P2d 1215 (1980). Potentially, parties to a lease agreement could agree that the lessee has an option to purchase which will remain open for a fixed period of time, regardless of whether the lease agreement remains in effect. Such a construction of the parties' intent might prevail where the option constitutes a separate agreement, or where the lease specifically provides that the option shall be valid for a fixed period independent of the lease or where separate consideration is stated for the option. None of these possibilities exists in this case. We conclude that the parties intended the option to be one of the rights plaintiff would have as tenant of the property and did not intend it to exist independently of rights under the lease. Under plaintiff's proferred construction, he could, by paying the first installment, tie up the property for three years without paying rent. We do not believe such a result was intended by the parties.

Under plaintiff's second assignment of error he seeks recovery on a theory of "implied or constructive trust" of the benefit he conferred on defendant by improving the land to permit farming. The complaint, however,

does not allege that plaintiff is entitled to have a constructive trust imposed on any specific property; it merely seeks to recover the alleged value of the improvements.

"* * * When the possession of no specific identifiable property is sought and only a money judgment is requested, quasi-contract is the remedy. * * * " *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 558, 577 P2d 477 (1978), *cert den* 439 US 1051, 99 S Ct 733, 58 L Ed 2d 712 (1979).

■ Where a lease is lawfully terminated prior to its expiration, and it provides that certain improvements made by the tenant are to become the property of the landlord upon expiration of the lease, the tenant forfeits any interest in those improvements, absent equitable considerations which dictate a contrary result. *Prins v. Van Der Vlugt et ux,* 215 Or 682, 696-97, 337 P2d 787 (1959). The lease in this case provides that the fence and pump are to remain part of the realty upon termination and plaintiff is not entitled to their return. Further, as a general rule, in the absence of an agreement to the contrary, improvements made by a tenant to property become the property of the landlord upon termination. *Shields v. Dept. of Rev.,* 266 Or 461, 470, 513 P2d 784 (1973); *State Hwy. Comm. v. Demarest,* 263 Or 590, 603, 503 P2d 682 (1972). There is no such contrary agreement in this case. The right to recover in quasi-contract for benefits conferred on another exists only if the recipient of the benefit has been unjustly enriched thereby. *Derenco v. Benj. Franklin Fed. Sav. and Loan, supra,* 281 Or at 558, 577 P2d 477. There can be no doubt that the land as improved is worth more than before plaintiff cleared, leveled and irrigated it, but the improvements were made, not pursuant to the request of defendant, but for plaintiff's own purposes in contemplation that he would one day purchase the property. Defendant obtains the benefit only because plaintiff defaulted on payment of rent. Plaintiff is not entitled to restitution of the value of his improvements.

■ The substance of plaintiff's argument with respect to denial of his claim for conversion is that his trailer house and irrigation equipment were converted by defendant's authorization for Wells to use both as subsequent lessee of the land. As mentioned, there is a significant factual

dispute whether such an authorization was ever given. There are facts which might be inferred to support either side. Assuming, without deciding, that a landlord's authorization for a subsequent tenant to use property left there by a prior tenant without any demand that such property be removed is actionable as a conversion, it nevertheless appears that the trial court decided the matter in favor of defendant — i.e., that there was no authorization. There was evidence to support that conclusion.

Affirmed.