Argued and submitted September 24, 1982, affirmed February 2, reconsideration denied March 18, petition for review denied May 3, 1983 (294 Or 792)

PRATT et al,
*Respondents,*
*v.*
McNALLY-RATHBONE, INC.,
*Appellant.*

(80-2-473, CA A23526)

658 P2d 516

Ridgway K. Foley, Jr., Portland, and James O. Goodwin, West Linn, argued the cause for appellant. With them on the briefs were John R. Faust, Jr., J. P. Graff, and Schwabe, Williamson, Wyatt, Moore & Roberts, and Martin J. Howard, and Gilley, Busey, Howard & Rindfusz, Portland.

William B. Wyllie, Salem, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

### RICHARDSON, P. J.

Lessee appeals a judgment that terminated its commercial lease, including an option to purchase, claiming that the court erred in terminating the lease and the option and in awarding attorney fees to lessor. In May, 1976, after lengthy negotiations, the parties entered into an agreement for lessee's rental of approximately 5 acres in Portland for use as a recreational vehicle sales and service lot. The agreement was drafted by lessor's property manager in consultation with lessee's real estate agent. Lessee was to make an initial deposit of $10,000 and pay $1,900 per month, as well as any real property taxes in excess of $5,000, for 10 years and was granted the right to purchase the property on six months' notice anytime within the first five years of the lease. If the option were exercised, the $10,000 deposit, as well as $500 of each monthly payment, were to be credited toward the purchase price. The $10,000 initial payment was denominated a "security deposit" but had several purposes under the lease. It was to be used by lessor to bring property taxes up to date, and lessor was to pay lessee interest for use of the money. The deposit was to be forfeited by lessee in the event of noncompliance with the lease; or it would apply to rent in the sixth year of occupancy, if the option to purchase were not exercised.

Lessee took possession of the property and made substantial improvements. Rent payments were due on the first of the month, with a 10-day grace period, after which lessor was entitled without notice to enter and remove lessee. Lessor arranged for rent to be collected by its property manager. Payments were consistently made after the first of the month and frequently after the tenth of the month. Lessor's property manager followed the practice of waiting 12 days after receiving them from lessee before mailing them to lessor; thus most payments were actually deposited in lessor's bank account at the end of the month, or even at the beginning of the following month.

In August, 1979, lessor authorized its manager to take action to obtain prompter payment from lessee. Lessor's manager sent lessee a letter indicating displeasure with the late payments and stating that interest would be charged on subsequent late payments. Subsequent

payments were late. In November, 1979, at lessor's request, the manager sent another letter to lessee, saying in part:

"Today is Monday, November 19, 1979, and as of this date we have not received your rental for the month of November which was due and payable on the first day of November.

"The [sic] number of times in the last several years cases have been brought before the Supreme Court and they upheld the fact that a lease would be void in the event the rental was not paid on time.

"This letter is a demand that the rental for the subject property be paid on time, or that the owners at their option may elect to cancel the lease."

Lessee claims never to have seen the letter. The December, 1979, payment was late. (The check was undated, but the envelope was postmarked December 18.) Lessor filed a forcible entry and detainer action on December 18 and on December 21 returned the December rent check. On December 28, 1979, lessee notified lessor of its intent to exercise the option to purchase and later tendered payment. The parties stipulated that, in lieu of the bond required of lessee as a condition of a continuance under ORS 105.140(1), payments of rent due under the lease would be deposited in lessor's attorney's trust fund account. They further stipulated that the payments and their acceptance would be without prejudice to the rights of the parties. An amount equal to the December, January and February rent payments was transmitted by the attorney to lessor's property manager who paid himself and lessee's agent the amount of their usual commission on three months' rent and returned the rest of the money to the account. Subsequent rental payments were deposited and left in the trust account.

The FED action was transferred from district court to circuit court because lessee pleaded equitable defenses. After trial the court found lessee in default, declared the lease (including its option) terminated and awarded possession to lessor. After notice of appeal was filed, on lessor's motion the court issued an amended order awarding attorney fees in the amount of $10,000 to lessor. Lessee assigns as error the court's award of attorney fees, as well

as the judgment in favor of lessor. We review *de novo*. ORS 19.125(3).

Lessee urges that lessor waived timely payment by consistently accepting late payments and also by the August, 1979, letter indicating that interest would be charged on subsequent late payments. We conclude that those actions did not constitute a waiver.

ORS 91.090 provides:

"The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

Thus, although acceptance of rent reinstates a lease, the reinstatement is for that rent period only. It is clear under the statute that a lease may provide for automatic termination after the 10-day grace period and that any previous acceptances of late payments do not constitute a waiver of the subsequent breach. *Ratoza v. The Flame, Inc.,* 277 Or 185, 559 P2d 1283 (1977); *Rainey v. Quigley,* 180 Or 554, 178 P2d 148 (1947).[1] The lease here did not provide for a different grace period than the 10-day period provided by the statute. The record shows that lessee's December, 1979, payment was made after the 10-day grace period. That breach was not waived by prior acceptances of late payments.[2]

---

[1] In addition, the lease itself contains a clause providing:

"Any waiver by the lessor of any breach of any covenant herein contained to be kept and performed by the lessee shall not be deemed or considered as a continuing waiver, and shall not operate to bar or prevent the lessor from declaring a forfeiture for any succeeding breach, either of the same condition or covenant or otherwise."

[2] Lessee mentions that he had not seen lessor's November letter indicating that lessor would institute action if future payments were not timely. However, *Rainey v. Quigley,* 180 Or 554, 566, 178 P2d 148 (1947), makes clear that, under the statute, notice of intent to insist on the strict provisions of the lease is not necessary, because any waiver operates for one rent period only.

Defendant relies on *Caine v. Powell,* 185 Or 322, 202 P2d 931 (1949), in which the court declined to enforce lessor's rights despite a late rent payment. In that case, the lessee had an equitable defense based on misrepresentation, and *Caine* has been limited to such situations. *See State Hwy. Comm. v. Demarest,* 263 Or 590, 600, 503 P2d 682 (1972). There was no allegation of misrepresentation here.

We do not find that lessor's letter represented to lessee that subsequent late payments would be acceptable. Lessee contends that the letter constituted a modification of the lease, providing that payments would be accepted late if lessee paid a 6 percent interest charge. We do not interpret the letter as a modification. It states, in part:

> "Also in accordance with the terms of the lease, rentals are due on the first day of each month, and have consistently in the last 7 months arrived roughly 17 days late.

> "In view of this fact, this is your notification that it is our intent * * * to charge you 6% on the funds which are due and which we have not received on time.

> "This is a minor annoyance for both of us and I hope you will correct the situation in getting the rental to us when it is due so that a good relationship between the Lessor and the Lessee may be maintained."

Lessor emphasized the due date and indicated a clear preference for timely payment. We read the 6 percent interest charge, not as a waiver of timely payment, but as a condition for any future periodic reinstatement of the lease and a discouragement of late payments. Lessor's clear intent was to abide by the terms of the lease, not to change them.

■ Citing *Reeves v. Baker,* 270 Or 837, 530 P2d 30 (1974), lessee contends that lessor reinstated the lease *after* the FED action was filed by exercising control over the rental funds in the trust account and disbursing part of the funds to real estate agents of both parties. The record is not clear as to exactly what happened. At the end of December, 1979, lessor's attorney received a check for $3,800, covering the amount of December and January rents, pursuant to the parties' stipulation. Another check for $1,900 was received in February, after which the trust account was

debited $5,700 in favor of lessor's agent. At the end of March, $5,472 was received from lessor's agent. The difference had gone to the parties' agents as their commissions. R. D. Pratt, who handled most of the business affairs of lessor, testified that he had not known that the money had been transferred to his agent and that his instructions were that it go into his attorney's trust account. He was out of the country at the time. Lessor's agent did not have a clear memory of what happened.[3] Lessor claims that the payment was a mistake but presented no evidence as to what had actually occurred.

In *Reeves v. Baker, supra,* the plaintiffs instituted an FED action for nonpayment of rent; the defendants deposited the tendered rent with the county clerk. After trial, judgment for the plaintiffs and filing of a notice of appeal, the plaintiffs moved for disbursement of the tendered rent to them, and the motion was granted. The court found under ORS 91.090 and *Kruse v. Blair et al.,* 127 Or 393, 272 P 265 (1928), that

"* * * when plaintiffs after default in payment of the rent accept payment of the rent upon which their action is

---

[3] He testified:

"To the best of my knowledge we were instructed to not cash any further checks, and I think we sent the checks over to Mr. Samuels' office to Dave Weiner and then after that period of time of approximately — that period of time they were sent back and allowed — told us to go ahead and cash the three checks so that would be the equivalent of three payments.

"* * * * *

"I can't answer why. The balance was paid to Samuels, Yoelin & Weiner, 5472.

"Q I don't understand that.

"A I'm sorry, I don't either.

"Q You mean —

"A The check apparently was returned to us and we were to deduct the three months' fee and remit the balance to Samuels' office. * * *

"* * * * *

"Q Now, tell me again where this money came from and how these checks were handled, these three months of $1900?

"A To the best of my knowledge they were sent over to Samuels' office and then we must have received the checks back or a check from them back following the instructions we distributed, as I just said."

predicated, the lease was 'reinstated' subject to termination of subsequent defaults in payment of rent. * * *" 270 Or at 840.

The judgment was reversed, and the lessor's complaint was dismissed. We do not find *Reeves* controlling under these special circumstances. Unlike the lessor in *Reeves*, who had no part in the decision that payments be paid into the court, lessor in this case agreed with lessee that payment of the money would be without prejudice to either party. Handling of the money after payment was made into the trust account did not affect the underlying agreement that lessee would have a continuance (and thus remain in possession) if lessee paid the rent according to the stipulation. Although it is true that lessor did not prove that the disbursement was unintentional, the record does not indicate that it was anything but inadvertent. In *Reeves* the landlord's intention to accept payment was clear; he moved for the funds to be disbursed to him. Here the record does not show that lessor intended acceptance of rent or reinstatement of the lease.[4]

■ Lessee argues that, even if the lease was terminated, the option survives.[5] In a lease with an option to purchase there is no absolute rule regarding the survival of the option when the lease is breached; it has been considered a question of contractual interpretation. Thus, in *Gourley v. O'Donnell*, 51 Or App 477, 626 P2d 367 (1981), we found that the option to purchase had terminated when it had not been exercised at the time the lease was breached. We stated:

"* * * Potentially, parties to a lease agreement could agree that the lessee has an option to purchase which will remain open for a fixed period of time, regardless of whether the lease agreement remains in effect. Such a construction of the parties' intent might prevail where the option constitutes a separate agreement, or where the lease specifically provides that the option shall be valid for a fixed period independent of the lease or where separate

[4] Lessor claims that lessee remained in default in any case, because there were failures to comply with the lease besides nonpayment of rent. However, nonpayment of rent was the only basis of the FED action.

[5] Lessee argues alternatively that, if the lease was reinstated by landlord's acceptance of rent, the option is also reinstated. We need consider only the first argument, because we find that the lease was not reinstated.

consideration is stated for the option. None of these possibilities exists in this case. We conclude that the parties intended the option to be one of the rights plaintiff would have as tenant of the property and did not intend it to exist independently of rights under the lease. * * *" 51 Or App at 483.

The Supreme Court, in *Gwaltney v. Pioneer Trust Company,* 184 Or 459, 199 P2d 250 (1948), found that the option to purchase terminated with the lease, because under the contract the option was in consideration of the lessee's covenants, including the promise to pay rent when due. We arrive at the same conclusion here.[6]

Lessee suggests that the $10,000 "security deposit" paid at the beginning of the tenancy was consideration for its option to purchase. Although one of lessee's owners, McNally, testified that he believed the $10,000 was a payment for the option, the contract does not reflect that intention.[7] The option to purchase is listed along with all other terms of the lease following that phrase:

> "In consideration of the leasing of said premises and of the mutual agreements herein contained, each party hereto does hereby expressly covenant and agree to and with the other, as follows: * * *."

There is no language indicating that the $10,000 payment furnished independent consideration for the option or indicating that the option was independent of the rental agreement.[8] *See McCreight et ux v. Girardo,* 205 Or 223, 234, 280 P2d 408, 287 P2d 414 (1955); *Jones v. Kelley,* 48 Or App 395, 616 P2d 1215 (1980).

---

[6] The approach taken in *Gourley* and *Gwaltney* is in accord with the law of divisibility of contracts generally. *Cf. Henderson v. Morey,* 241 Or 164, 405 P2d 359 (1965) (divisibility of land sale contract depends whether consideration is viewed as a whole or as apportioned among different promises).

[7] Lessee does not contend that the lease is ambiguous and so parol evidence should be considered.

[8] The paragraphs concerning the option and the $10,000 are as follows:

"21) No later than May 1, 1976 Lessee shall pay Lessor a security deposit of $10,000. which $10,000. shall be utilized by Lessor along with other funds to bring property taxes current.

"Lessor shall pay Lessee on the anniversary date of the payment of said $10,000. 6% of said $10,000. for the utilization of these funds.

"Said security deposit shall be:

■ ■ Lessee contends that, because of the $10,000 "security deposit," there was no breach for nonpayment of rent. As discussed above, the $10,000 payment had several purposes under the lease, one of which was to serve as rent in the sixth year if the option to purchase were not exercised. When a deposit is purely prepaid rent, it is the absolute property of the landlord, and the landlord is not required to apply it to interim payments. *Powers v. Kirkman Laboratories, Inc.*, 45 Or App 1083, 1087, 610 P2d 280, *rev den* 289 Or 587 (1980); *State Hwy. Comm. v. Demarest, supra,* 263 Or at 597.

---

"a. Forfeited by Lessee in the event of failure to comply with terms of this lease, or

"b. If the Lessee complies with the terms of this lease, said funds shall apply on rentals during the first 5 months of the 6th year of this lease, or

"c. In the event of exercise of option to purchase referred to below shall apply on the purchase price.

"22) Lessor grants Lessee the exclusive and irrevocable right to purchase the leased premises at any time through the first five years of this lease in the following manner:

"a. Lessee shall give Lessor 6 month prior written notice of said intent to purchase.

"b. Purchase price shall be $300,000. in cash against which Lessee may credit against said purchase price the following:

"(1) Referred to $10,000. recited in paragraph 21 above.

"(2) $500. of each of the $1,900. monthly payments made prior to closing of purchase.

"c. Purchaser may desire to purchase the property on terms in lieu of all cash on closing.

"(1) The net amount due shall be determined in the same manner as paragraph 22b. above.

"(2) An additional $35,000. in cash shall be paid on closing.

"(3) The then remaining balance shall be amortized over a 10 year period; payments to include principal and interest at 8-1/2% per annum.

"(4) The balance shall be secured by a Trust Deed with the Lessee as grantor, Pioneer National Title Insurance Company, 421 S. W. Stark, Portland, Oregon as Trustee and the Lessor as beneficiary. Blank form of said trust deed is attached hereto.

"(5) Balance referred to in 22b. (4) above may be prepaid without interest, *excepting that* during the first 3 years of amortization period *no* more than 29% of the principal shall be paid." (Emphasis in original.)

As stated in *Demarest* and reiterated in *Powers:*

"* * * 'when the landlord requires the * * * last month's rental to be paid in advance, he also expects that the monthly rental in the interim will be paid according to the terms of the lease.' " 45 Or App at 1087.

The "security deposit" here should be treated the same way. Despite its name, there was no circumstance under the lease in which the money would be returned to lessee. If lessee had complied with the lease, the deposit would either have constituted a payment toward the purchase price or have been applied to the first five month's rent in the sixth year of the ten-year lease. As with the payments in *Powers* and *Demarest,* the deposit was the absolute property of the landlord and did not relieve lessee of the duty to make timely interim payments. If it were to be applied to rent, it was to be applied in the sixth year and not earlier. It did not prevent lessee from being in breach.

Lessee also alleges several grounds for estoppel, including that lessor is estopped to terminate the lease because part of the reason for the payments' late arrival was lessor's agent's policy of waiting 12 days before sending them to lessor. However, the record shows that the payment with which we are concerned, December, 1979, was more than 10 days late in reaching lessor's agent.

Lessee claims that lessee and lessor had a friendly relationship in which they did favors for each other and that lessor R. D. Pratt was frequently on the premises and never indicated an intent to institute proceedings. Lessee also asserts estoppel on the ground that, with lessor's knowledge, it made $177,127.73 worth of improvements on the property. The lease contemplates improvements, and we fail to see how any of these facts affects lessor's right to possession based on lessee's nonpayment of rent. *See Rainey v. Quigley, supra.* The trial court did not err in terminating the lease and the option.

Lessee also assigns as error the trial court's award of $10,000 for attorney's fees to lessor in an amended judgment order entered after lessee filed its notice of appeal. Lessee did not file a separate notice of appeal from the amended order. Lessor contends that the parties had stipulated that the court could award reasonable attorney

fees and that the court was permitted to correct its original order to include the award. Lessee disputes lessor's interpretation of their stipulation and maintains that the trial court was without jurisdiction to enter the amended order after notice of appeal was filed.

■　The amended judgment order is in the trial court file. However, no appeal was taken from the amended judgment order, and we do not have jurisdiction to review the merits of either parties' contentions regarding the amended judgment. It simply is not before us for review, and we do not express any view as to its validity. *But see Desler and Desler,* 56 Or App 812, 643 P2d 655 (1982).

Affirmed.