**MOUNTAIN QUEEN CONDOMINIUM ASSOCIATION, INC., d/b/a The Mountain Queen, a Colorado non-profit corporation; Molly Nowlin, individually and as Manager of the Mountain Queen; and Marcelle B. Payton; Petitioners,**

v.

**Ronald J. HAAN, Respondent.**

**No. 85SC472.**

Supreme Court of Colorado, En Banc.

April 18, 1988.

KIRSHBAUM, Justice.

In *Haan v. Mountain Queen Condominium Association,* 717 P.2d 969 (Colo. App.1985), the Court of Appeals held that under statutory provisions prohibiting the wrongful withholding of security deposits, §§ 38–12–101 to –103, 16A C.R.S. (1982) (hereinafter referred to as the "Security Deposit Act"),[1] respondent Ronald J. Haan (Haan) is entitled to recover treble damages against petitioners Mountain Queen Condominium Association (Mountain Queen), Molly Nowlin (Nowlin), and Marcelle B. Payton (Payton) for Mountain Queen's failure to refund a payment made by Haan. Having granted certiorari to review that judgment, we reverse and remand with directions.

I

Mountain Queen is an association of persons who own condominium units in Aspen, Colorado. On February 2, 1981, Nowlin was the agent for certain of Mountain Queen's members, including Payton, who wished to rent their individual units to others. On that day Haan, a Maryland resident, and Nowlin conducted a very brief telephone conversation concerning Haan's interest in obtaining accommodations in Aspen from March 1 through March 4, 1981. Nowlin stated that a unit was available at a cost of $340 per night and that Haan would have to send her the full amount of $1,360 within seven days as a deposit to "hold" the unit. Neither the precise nature of this payment nor any of Mountain Queen's refund or cancellation policies were discussed. The available unit to which Nowlin referred was owned by Payton.

Haan sent Mountain Queen a check for $1,360, dated February 4, 1981, which Mountain Queen promptly deposited. On February 27, 1981, Haan appeared in person at Mountain Queen's Aspen office, told Nowlin that because his skiing companion had suffered a broken leg he would not be

Klein, Seigle & Krabacher, P.C., Thomas C. Hill, Aspen, Kirkland & Ellis, Bruce A. Featherstone, Denver, for petitioners.

Oates, Hughes & Knezevich, P.C., Robert W. Hughes, Deborah Quinn, Aspen, for respondent.

1. At the time this action was commenced, the Security Deposit Act was codified at §§ 38–12–101 to –103, 16 C.R.S. (1973 & 1981 Supp.). It is now codified, without change, at §§ 38–12–101 to –103, 16A C.R.S. (1982).

able to stay in Aspen and requested a refund of the $1,360. Nowlin informed Haan that Mountain Queen required notice of cancellation no less than thirty days prior to arrival, that Haan's request was not timely and that no refund would be made.[2] Mountain Queen had not previously informed Haan of any of its cancellation policies, and other than the transmission of Haan's check the parties had not communicated in any manner between February 2 and February 27.

By letter dated April 6, 1981, Haan notified Mountain Queen that unless it refunded the $1,360 deposit within seven days he would file suit for treble damages pursuant to the Security Deposit Act. When Mountain Queen did not refund the money, Haan filed this civil action.

Following a brief trial to court, the trial court concluded that Mountain Queen was required to pay Haan $1,360, plus interest, as a refund of a "rental deposit." The trial court also concluded that the Security Deposit Act did not apply to this transaction because in enacting the Colorado Security Deposit Act the General Assembly did not intend "to bring commercial lodging facilities such as the Mountain Queen condominium association under the application of said law." On appeal, the Court of Appeals reversed the trial court's conclusion that Haan was not entitled to treble damages under the Security Deposit Act.[3] We conclude that Haan's payment was not a "security deposit" as defined by the Security Deposit Act, and therefore reverse the judgment of the Court of Appeals.

## II

In reversing the trial court's judgment, the Court of Appeals observed that it was "undisputed" that Haan's payment was re-

quired "to secure his performance of the rental agreement."[4] *Haan v. Mountain Queen Condo. Ass'n,* 717 P.2d 969, 970 (Colo.App.1985). However, both Haan and Mountain Queen categorized the nature of the payment as a matter in dispute in their trial data certificates. Furthermore, the trial court's judgment ordering Mountain Queen to pay Haan $1,360, plus interest, constitutes a portion of the record in this case. In its written order the trial court found that Haan paid the sum "to reserve" the unit for the period March 1 through March 4, 1981, and referred to the payment as a "rental deposit" and a "reservation deposit." Haan's motion for new trial did not question the trial court's characterization of his February 4, 1981, payment as a rental deposit, and Mountain Queen's memorandum in opposition to that motion described the payment as a rental deposit. Finally, Mountain Queen's answer brief filed in the Court of Appeals specifically argued that Haan's payment did not constitute a security deposit as defined by the Security Deposit Act. At no point during the tortuous progress of this litigation have the parties agreed that Haan's payment was in fact a security deposit.

However, the question of whether the payment was a security deposit pursuant to the Security Deposit Act cannot be disposed of on the ground that the trial court denominated it a "rental deposit." The trial court did not specifically determine the primary function of the payment. The statute requires such a determination, whatever nomenclature might be used to describe it, when the nature of such a payment is contested. § 38–12–102(2), 16A C.R.S. (1982); *see also Granberry v. Islay Invs.,* 161 Cal.App.3d 388, 207 Cal.Rptr. 652 (1984); *Pratt v. McNally–Rathbone, Inc.,* 61 Or.App. 443, 658 P.2d 516 (1983). Al-

---

**2.** This cancellation policy and other matters relating to occupancy of Mountain Queen units was set forth in a set of written conditions given to renters together with keys upon arrival.

**3.** On appeal, neither party challenged the trial court's judgment awarding Haan a refund of his "rental deposit."

**4.** The Court of Appeals also found that the parties did not dispute the fact that the condominium was a residential rather than an office unit.

though the character of this payment is disputed, the critical evidence in this case is not in dispute; thus, we can make a legal determination of the nature of this payment on appeal. *See Stanske v. Wazee Elec. Co.*, 722 P.2d 402 (Colo.1986).

The Security Deposit Act states in pertinent part as follows:

**38–12–101. Legislative declaration.** The provisions of this part 1 shall be liberally construed to implement the intent of the general assembly to insure the proper administration of security deposits and protect the interests of tenants and landlords.

**38–12–102. Definitions.** As used in this part 1, unless the context otherwise requires:

. . . .

(2) "Security Deposit" means any advance or deposit of money, regardless of its denomination, the primary function of which is to secure the performance of a rental agreement for residential premises or any part thereof.

**38–12–103. Return of security deposit.** (1) A landlord shall, within one month after the termination of a lease or surrender and acceptance of the premises, whichever occurs last, return to the tenant the full security deposit deposited with the landlord by the tenant, unless the lease agreement specifies a longer period of time, but not to exceed sixty days. No security deposit shall be retained to cover normal wear and tear. In the event that actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement listing the exact reasons for the retention of any portion of the security deposit. When the statement is delivered it shall be accompanied by payment of the difference between any sum deposited and the amount retained. The landlord is deemed to have complied with this section by mailing said statement and any payment required to the last known address of the tenant. Nothing in this section shall preclude the landlord from retaining the security deposit for nonpayment of rent, abandonment of the premises, or nonpayment of utility charges, repair work, or cleaning contracted for by the tenant.

(2) The failure of a landlord to provide a written statement within the required time specified in subsection (1) of this section shall work a forfeiture of all his rights to withhold any portion of the security deposit under this section.

(3)(a) The willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorneys' fees and court costs; except that the tenant has the obligation to give notice to the landlord of his intention to file legal proceedings a minimum of seven days prior to filing said action.

(b) In any court action brought by a tenant under this section, the landlord shall bear the burden of proving that his withholding of the security deposit or any portion of it was not wrongful.

(4) Upon cessation of his interest in the dwelling unit, whether by sale, assignment, death, appointment of a receiver, or otherwise, the person in possession of the security deposit, including but not limited to the landlord, his agent, or his executor, shall, within a reasonable time:

(a) Transfer the funds, or any remainder after lawful deductions under subsection (1) of this section, to the landlord's successor in interest and notify the tenant by mail of such transfer and of the transferee's name and address; or

(b) Return the funds, or any remainder after lawful deductions under subsection (1) of this section, to the tenant.

(5) Upon compliance with subsection (4) of this section, the person in possession of the security deposit shall be relieved of further liability.

(6) Upon receipt of transferred funds under subsection (4)(a) of this section,

the transferee, in relation to such funds, shall be deemed to have all of the rights and obligations of a landlord holding the funds as a security deposit.

(7) Any provision, whether oral or written, in or pertaining to a rental agreement whereby any provision of this section for the benefit of a tenant or members of his household is waived shall be deemed to be against public policy and shall be void.

§§ 38–12–101 to –103, 16A C.R.S. (1982).

The statute itself recognizes that language adopted by the parties to a rental agreement to describe a payment made by the tenant to the landlord prior to occupancy is not dispositive of the question of whether the payment constitutes a "security deposit." § 38–12–102(2). Such payment could be designed to respond to a variety of needs.

Landlords may select from a variety of well-recognized mechanisms to protect themselves from the consequences of a tenant's failure to fulfill the terms of tenancy under a rental agreement. Liquidated damage clauses providing for the forfeiture of a pre-determined sum; payment of a bonus, or some other additional consideration, by the tenant for the execution of a lease; and advance periodic payments are but a few examples of such mechanisms. *See Holmes v. Canlen Mgmt. Corp.,* 542 S.W.2d 199 (Tex.App.1976); *see generally* Restatement (Second) of Property § 12.1 comments k and *l* (1976); R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Property* 370–71 (1984); J. Rose, *Landlords & Tenants* 78 (1973); Note, *Security Deposits on Residential Leases,* 8 Val.U.L. Rev. 63, 65 (1973). The advance payment of all or part of the rent for premises is in reality performance by the tenant of what may be only one of several obligations of tenancy under a particular rental agreement. Such a payment fulfills the rental payment requirement of the lease; it does not serve to secure performance of obligations thereunder. Thus, at common law

a tenant is not entitled to a refund of an advance payment of rent because title thereto passes to the landlord immediately upon delivery. *See generally* R. Schoshinski, *American Law of Landlord and Tenant* § 6.29 (1980); Note, *Security Deposits in Residential Leases,* 8 Val.U.L.Rev. 63, 65 (1973). The sparse evidence introduced at trial certainly supports the trial court's characterization of the payment as advance rent, perhaps conditioned upon Haan's occupancy of the unit.[5]

Even though a copy of a condominium information sheet stating the conditions of occupancy of Mountain Queen's units was never transmitted to Haan, some indication of the association's view of the function of the advance payment may be gleaned from that document. It states in pertinent part as follows:

*A deposit* of 50% is required to confirm a reservation. This must be made no later than 10 days after scheduling the reservation. The balance is due 30 days prior to arrival, and a 7% tax is due upon arrival. Sorry, we do not accept credit cards. We reserve the right to withhold a 10% handling fee on any confirmed reservation which is cancelled more than 30 days prior to your arrival. If your reservations are cancelled less than 30 days prior to your arrival, the monies will be forfeited unless we are able to re-rent the unit for the same period. If at any time the reservation is changed— then cancelled, the deposit will be forfeited.

The sum is required to "confirm a reservation"—not to secure performance of a rental agreement. The sum is refundable in whole or in large part depending on varied factors: when the refund is requested; whether, on short notice, a replacement renter materializes or is found; or whether the reservation is changed prior to cancellation. The information sheet does not state that the deposit will be refunded if Haan pays the rent and occupies the premises— the only obligations Haan agreed to per-

5. *See supra* note 3.

form. The document's failure to suggest that the "deposit" was designed to insure a renter's future compliance with the Mountain Queen's rules and regulations supports the trial court's apparent conclusion that the sum was designed to discharge fully Haan's obligation to pay the agreed upon rent for the unit.

Haan testified only that Nowlin said advance payment of the sum was necessary to "hold the unit" for his occupancy. He did not testify concerning any other understanding or assumption he might have entertained about the function of his payment. This testimony does not establish either that the sum was designed to secure Haan's future performance of obligations under the rental agreement or that Haan so considered the payment. A more practical view of his testimony, as well as of his subsequent conduct in seeking a refund, is the conclusion that he too assumed that he was discharging his obligation to pay rent for the unit, conditioned upon his ultimate occupancy thereof. The fact that no party contested the trial court's characterization of the payment as a rental deposit further supports the conclusion that at the time the payment was made both Haan and Mountain Queen viewed it as a prepayment of the entire rent for the unit.

Although the Security Deposit Act does not discuss the concept of prepayment of rent, other legislative bodies have expressly recognized the distinction between advance rental payments and security deposits in statutes similar to the Security Deposit Act. *See* Cal.Civ.Code § 1950.5 (West 1988); Conn.Gen.Stat. § 47a–21 (1987);

Fla.Stat.Ann. § 83.49 (West 1987 & 1988 Cum.Supp.); Iowa Code §§ 562A.6 to 562A.12 (1987); Md.Ann.Code, Real Property § 8–203(a) (1988); Mass.Gen.Laws Ann. ch. 186 § 15B (1988); Or.Rev.Stat. § 91.760 (1987).[6] Courts construing such statutes have also acknowledged the distinction between a security deposit and the prepayment of rent. *See Granberry v. Islay Invs.*, 161 Cal.App.3d 388, 207 Cal.Rptr. 652 (1984); *Pratt v. McNally–Rathbone, Inc.*, 61 Or.App. 443, 658 P.2d 516 (1983).[7]

On the basis of the evidence presented at trial, the trial court's findings and conclusions, and the legal arguments advanced by the parties at all stages of this case, we conclude that the parties did not agree that Haan's $1,360 payment served to secure his performance of the rental agreement. To the contrary, the uncontradicted evidence requires the conclusion that the payment constituted performance in advance of his obligation to pay rent, as the trial court's order indicated. The evidence does not support Haan's claim that the payment constituted a security deposit as that term is defined for purposes of the Security Deposit Act. In view of this holding, we need not address Mountain Queen's further argument that its relationship with Haan did not constitute a landlord-tenant relationship for purposes of the Security Deposit Act.[8]

### III

For the foregoing reasons, the judgment of the Court of Appeals is reversed. The case is remanded to that court with di-

---

**6.** The acknowledgment of the distinction between these two forms of payment manifests itself in varying ways. Some statutes expressly exclude advance rent from the definition of the term "security deposit," *see* Or.Rev.Stat. § 91.760 (1987); while others expressly include such a payment within the definition, *see* Cal. Civ.Code § 1950.5 (West 1988).

**7.** In *Pratt v. McNally–Rathbone, Inc.,* 61 Or.App. 443, 658 P.2d 516 (1983), the Oregon Court of Appeals held that a payment denominated a "security deposit" was not truly a security deposit because there was no circumstance under the lease on which the payment would be re-

turned by the lessor to the lessee. In *Granberry v. Islay Investments,* 161 Cal.App.3d 388, 207 Cal.Rptr. 652 (1984), the California Court of Appeals found that the provision in its security deposit statute which suggested that an advance payment of rent could be a security deposit was "absurd."

**8.** For a discussion of the meaning of landlord-tenant relationship as that term is used in the Security Deposit Act, see *Houle v. Adams State College,* 190 Colo. 406, 547 P.2d 926 (1976).

rections to reinstate the judgment of the trial court.

MULLARKEY, Justice, specially concurring:

Because the respondent failed to meet his burden of proving that "the primary function" of his check for $1360.00 was to serve as a security deposit, I concur in the result reached by the majority. *See* § 38–12–102(2), 16A C.R.S. (1982). I write separately because I would base the holding on a different rationale.

In order to determine whether the respondent's payment was a security deposit, the majority focuses on whether the payment was performance of an obligation under the rental agreement. The opinion states that the payment involved in this case was not a security deposit because it was payment in full of the rent, and, therefore, it did not serve to secure the tenant's performance under the lease. At 1238. However, the majority opinion does not provide a framework for determining under what circumstances an advance payment *does* secure the tenant's performance so that it should be considered to be a security deposit. In my view, the analytical key is whether the payment serves the purpose of a "security deposit" as the term is used in the Security Deposit Act and to answer that question we must look to the Act.

We have repeatedly stated that, "In construing statutes, we must choose a construction that serves the purposes of the legislative scheme." *Colorado Dep't of Social Servs. v. Board of County Comm'rs,* 697 P.2d 1, 18 (Colo.1985) (citing *Smith v. Myron Stratton Home,* 676 P.2d 1196, 1199 (Colo.1984)). In this case, the legislative declaration, section 38–12–101, states that the Security Deposit Act should be construed liberally to implement the legislature's intent to "insure the proper administration of security deposits and protect the interests of tenants and landlords." Therefore, the procedure for obtaining the return of a security deposit should be sim-

ple, straightforward, and not overly technical. *See generally* Yee, *The Colorado Security Deposit Act,* 50 U.Colo.L.Rev. 29, 29 (1978–79) ("The Act was designed to make it economically feasible for the tenant of a residential dwelling unit to secure repayment of his security deposit at the termination of the lease, even though the amount of the deposit was too small to justify filing suit."); Comment, *Landlord–Tenant—Security Deposits—Colorado's Wrongful Withholding of Security Deposits Act: Three Litigious Snares in an Untested Law—Colo.Rev.Stat.Ann. §§ 58–1-26 to –28,* 49 Denver L.J. 453, 453 (1972–73) (Act was a response to "widespread situation of disparate bargaining" which resulted from the knowledge that "tenant's expense in enforcing his right to the return of the security deposit through the judicial process would virtually always exceed the amount of the recovered deposit.").

Another well-settled principle of statutory construction is that the court must consider the act as a whole and give meaning to each of its provisions. *See, e.g., Martinez v. Continental Enter.,* 730 P.2d 308, 315 (Colo.1986); *People v. Yellen,* 704 P.2d 306, 310 (Colo.), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985). Here, the definition of a security deposit in section 38–12–102(2), *i.e.,* that a security deposit is an advance or deposit of money which secures the tenant's performance, seems circular if read out of context. The definition is clarified, however, by reading it together with the stated legislative purpose and the provisions governing the treatment of security deposits set forth in section 38–12–103(1). Section 103(1) provides that after the tenancy ends, if the tenant has fulfilled his obligations under the rental agreement, the entire security deposit will be returned; if the tenant has not performed satisfactorily, the landlord can retain all or part of the deposit by following the procedure set forth in section 38–12–103(1). Thus, the purpose of a security deposit is to "secure" the tenant's performance by giving the tenant an incentive to perform satisfactorily so that the

money will be returned at the end of the lease and by providing a remedy for the landlord in the event the tenant does not perform satisfactorily. This interpretation is consistent with the common understanding of a security deposit as a classification which "accommodates the landlord's desire for protection and the normal expectation of the tenant for a return of all or part of the fund at the end of the tenancy." R. Schoshinski, *American Law of Landlord and Tenant* § 6:27, at 452 (1980) (footnote omitted). *See generally Black's Law Dictionary* 1217 (5th ed. 1979) (defining security deposit as "[m]oney deposited by tenant with landlord as security for full and faithful performance by tenant of terms of lease, including damages to premises").

The respondent, who was the tenant and the plaintiff below, had the burden of showing that the payment was intended to serve as a security deposit. *See generally* R. Schoshinski, *supra*, § 6:27, at 451 (1980) (classification of deposit is based on parties' intent). It was not enough for the respondent to testify, as he did here, that he expected to get his money back if he cancelled before the date when his reservation began. That is not a security deposit for purposes of our law.

The respondent had to prove that his money would have been returned after he stayed in the condominium if he satisfied the terms of the lease. He could have met this burden by introducing evidence that the parties intended that (1) he would pay an additional $1360.00 as rent for the four days when he stayed in the condominium; and (2) the petitioners would keep the $1360.00 deposit check he had already sent for as long as one month after he checked out and then would return it only if he had complied with the rental agreement, pursuant to section 38–12–103(1). Such evidence clearly would have shown that the check was not prepayment of rent but was in-

tended to be a security deposit. The respondent, however, introduced no evidence from which the court could conclude that the parties had intended the security deposit to be held pursuant to section 38–12–103(1) and he therefore failed to meet his burden of proof.[1]

In conclusion, I agree with the majority opinion that the language adopted by the parties is not dispositive. *See* § 38–12–102(2), 16A C.R.S. (1982). Therefore, the mere fact that a rental agreement describes a payment of money as an advance payment of rent, a rental reservation deposit, or the last month's rent does not mean that the payment is not a "security deposit" within the meaning of the Security Deposit Act. However, the plaintiff has the burden of showing that the payment meets the statutory definition for, and fulfills the purposes of, a security deposit. The respondent did not meet this burden. Accordingly, I agree that the judgment of the court of appeals should be reversed and that the trial court's order should be reinstated.

I am authorized to state that Justice VOLLACK joins in this special concurrence.

1. The majority notes that the condominium information sheet "was never transmitted to the respondent," At 1238, but still relies in part on its provisions. Because the petitioners neither gave the respondent a copy of the sheet nor informed him of its contents, the sheet can be no indication of the parties' state of mind. It is irrelevant to the issue in this case and I would rely solely on the respondent's failure to meet his burden of proof, rather than on any affirmative showing by the petitioners.