McCREA & CO. AUCTIONEERS, INC., Plaintiff–Appellee and Cross–Appellant,

v.

DWYER AUTO BODY and Patrick G. Dwyer, Defendants–Appellants and Cross–Appellees.

No. 87CA1805.

Colorado Court of Appeals, Div. V.

Dec. 21, 1989.

As Modified on Denial of Rehearing May 3, 1990.

Bell & Pollock, P.C., Bradley P. Pollock, Littleton, for plaintiff-appellee and cross-appellant.

Hall & Evans, Alan Epstein and Jeffery B. Stalder, Denver, for defendants-appellants and cross-appellees.

Opinion by Judge RULAND.

Dwyer Auto Body and its owner, Patrick G. Dwyer, defendants, appeal the judgment entered upon a jury verdict in favor of plaintiff, McCrea & Co. Auctioneers, Inc. McCrea & Co. cross-appeals. We affirm in part and reverse in part.

The record reflects that McCrea & Co. had conducted an auction business for many years. Dwyer established an automobile repair business but had no experience in conducting auctions.

The testimony is in dispute relative to the business association formed by the parties. In view of the jury's resolution of this dispute, we consider only the testimony of McCrea & Co. on this issue. *See Lambrecht v. Archibald*, 119 Colo. 356, 203 P.2d 897 (1949).

In early 1982, Dwyer approached McCrea & Co. relative to obtaining a contract from Public Service Co. to auction PSC's used vehicles and equipment. Dwyer indicated that he had a personal friendship with the PSC employee responsible for selecting an auction firm. Even though the PSC contract was subject to the bidding process, Dwyer represented that his ties with the PSC employee were such that if he had an auctioneer working with him, he would obtain the contract as long as the parties wanted it.

Contingent upon obtaining the PSC contract, the parties entered into an oral agreement in the nature of a joint venture. Dwyer agreed to fix, paint, and "detail" the vehicles to the satisfaction of PSC, and McCrea & Co. agreed to conduct the auctions. Dwyer was to be paid a set fee for preparing each vehicle for auction and then the sales commissions were to be split equally.

Pursuant to this agreement, McCrea & Co. submitted a bid to PSC reflecting that Dwyer would serve as a subcontractor to detail the vehicles. The contract was awarded to McCrea & Co. for a one-year term. By the end of that year, approximately $80,000 in commissions had been generated from the auctions.

The contract between McCrea & Co. and PSC required that the auctions be conducted on two lots owned by Dwyer on Kalamath Street. Dwyer's lots were separated by a third lot which contained a building.

In late 1982, Dwyer advised McCrea that he was purchasing the third Kalamath Street lot. McCrea orally agreed to lease the lot and building and to relocate its business on that property. And, upon beginning its tenancy, McCrea & Co. remodeled and improved Dwyer's building in addition to paying the agreed upon rent.

While McCrea & Co. was in the process of improving Dwyer's building, Dwyer advised the PSC employee that he planned to bid the upcoming 1983 auctioneering contract independent of McCrea & Co. However, neither Dwyer nor PSC advised McCrea & Co. of this fact. Dwyer then submitted a bid on the contract and, three days later, evicted McCrea & Co. from the Kalamath property.

Unaware that Dwyer intended to submit a bid, McCrea & Co. also bid the auction contract intending, as before, to include Dwyer pursuant to the prior agreement. However, following the eviction, McCrea & Co. lacked a suitable location to conduct the auctions, and thus, it was unable to compete for the contract.

Dwyer was awarded the PSC contract and ran the auction for the next four years. In that period no bids for the contract were elicited by PSC from any other bidders.

Then McCrea & Co. sued Dwyer, claiming breach of contract, fraud, unjust enrichment for the improvements to Dwyer's building, and interference with prospective business relation. It sought punitive, as well as compensatory, damages. The jury returned a verdict in favor of McCrea & Co. awarding separate amounts for breach of contract, fraud, business interference,

unjust enrichment, and $100,000 in punitive damages.

In response to Dwyer's motion for new trial, the court concluded that the evidence established a contract dispute and not a tort claim. Accordingly, it set aside the award of punitive damages. As to the contract, fraud, and business interference claims, the court concluded it should grant a new trial unless McCrea & Co. accepted a reduction in the actual damages award to $155,122 for all claims. This appeal and cross-appeal followed.

## I.

■ Dwyer first contends that the trial court erred in refusing to dismiss McCrea's breach of contract claim asserting that this claim was barred by the statute of frauds. We conclude that the trial court's ruling was correct.

Section 38–10–112(1)(a), C.R.S. (1982 Repl.Vol. 16A) precludes oral contract claims on "[e]very agreement that by the terms is not to be performed within one year after the making thereof ..." Dwyer concedes that, generally, part performance excepts an oral agreement from the bar of the statute. *Ridgeway v. Pope*, 163 Colo. 160, 430 P.2d 77 (1967). However, he insists that application of the part performance doctrine to § 38–10–112(1)(a) would abrogate the statute because nominal performance by only one party would render an oral agreement enforceable. We need not address Dwyer's premise because this is not a case involving only nominal performance by one party.

Here, the performance by both parties was substantial and consistent with the evidence presented by McCrea & Co. as to the terms of the joint venture. In addition, the part performance doctrine has been applied in this jurisdiction to various types of oral agreements. *See Sackett v. Rodeck*, 75 Colo. 425, 226 P. 295 (1924); *Ralston Oil & Gas Co. v. July Corp.*, 719 P.2d 334 (Colo.App.1985). We perceive no basis for concluding that the doctrine should not extend to oral partnership or joint venture agreements. *See Shaefer v. Bork*, 413 N.W.2d 873 (Minn.Ct.App.1987). Indeed,

failure to approve application of the doctrine in this case would allow the statute to bar a just claim and thus become an "instrument of fraud." *See Kiely v. St. Germain*, 670 P.2d 764 (Colo.1983).

To the extent that *School District No. 46 v. Johnson*, 26 Colo.App. 433, 143 P. 264 (1914) is inconsistent with the conclusion we reach here, we decline to follow that decision.

## II.

■ Dwyer next contends that the trial court erred in denying a motion to dismiss the unjust enrichment claim. Relying upon cases such as *Gourley v. O'Donnell*, 51 Or.App. 477, 626 P.2d 367 (1981), he argues that, because the lease between the parties was silent as to reimbursement for improvements, McCrea & Co. may not prevail on this claim. We find no merit in this contention.

■ In Colorado, an award to avoid unjust enrichment may be made if the evidence establishes the elements necessary for recovery under this doctrine and if any express contract between the parties fails to address the subject matter of the award. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo.1982). Further, there was competent evidence to support the jury's determination that each of the elements of unjust enrichment was established. *See Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986).

## III.

■ Dwyer also contends that the trial court erred by denying his motion to dismiss the claim for tortious interference with prospective business advantage. Dwyer asserts that his conduct falls within the privilege extended to competitors. We disagree.

■ The privilege does not apply when the competitor employs "wrongful means." And the jury was so instructed. *See* Restatement (Second) of Torts § 768(1)(b) (1965). Joint venturers owe to each other a

fiduciary duty of loyalty and fair, open, and honest disclosure, *Hooper v. Yoder*, 737 P.2d 852 (Colo.1987), and "wrongful means" necessarily include breach of that duty. This is because the breach of a fiduciary duty constitutes constructive fraud. *See McCracken v. Conticommodity Services, Inc.*, 755 P.2d 454 (Colo.App. 1988). Hence, if, as here, one member of a joint venture surreptitiously acts to acquire the subject of the venture to the exclusion of the other, he employs a "wrongful means" of competition. *See Steeby v. Fial*, 765 P.2d 1081 (Colo.App.1988).

## IV.

■ Dwyer next contends that the trial court erred by allowing McCrea & Co. to introduce evidence regarding a PSC audit of Dwyer's operation of the auction. Even if we assume that admission of this evidence was error, reversal of the judgment is not warranted unless the error is shown to be prejudicial to a substantial right of the aggrieved party. *Bigler v. Richards*, 151 Colo. 325, 377 P.2d 552 (1963); CRE 103(a).

Here, the evidence elicited during examination of Dwyer concerning the audit was limited to a few questions. The only other reference was brief testimony from a PSC employee to impeach Dwyer's characterization of the audit as "normal." Conversely, the evidence in support of the claims for which the jury awarded damages was substantial. Under these circumstances, we perceive no prejudicial error.

## V.

■ Relying on former C.R.C.P. 121 § 1–18(1)(a)(VII), Dwyer asserts that the trial court erred in denying a motion to prohibit a damage expert called by McCrea & Co. from testifying. While McCrea & Co. designated the expert in its trial data certificate, Dwyer notes that the required summary of anticipated testimony was not included. We find no merit in this contention.

The record reflects that Dwyer was notified more than a year before trial that the expert was available to be deposed. Because the expert did not prepare a report, counsel for McCrea & Co. furnished the only information in its possession to Dwyer's counsel, which information consisted of an itemization of the damages.

The record reflects that Dwyer's counsel notified counsel for McCrea & Co. of his intent to depose the expert, but no deposition was scheduled. Nevertheless, the trial court allowed the testimony contingent upon allowing Dwyer's counsel to interview the expert in order to ascertain the substance and basis of his opinions.

Under all of these circumstances, we perceive no abuse of discretion by the trial court in allowing McCrea & Co. to present the expert's testimony. *See Group 1 Services, Ltd. v. Michilleti*, 650 P.2d 1305 (Colo.App.1982).

We have considered Dwyer's other contentions for reversal of the judgment and conclude that they either lack merit or do not warrant reversal.

## VI.

■ McCrea & Co. accepted the trial court's remittitur under protest and now pursues a cross-appeal under the rule announced in *Burns v. McGraw–Hill Broadcasting Co.*, 659 P.2d 1351 (Colo.1983). McCrea & Co. first contends that the trial court erred in setting aside the award of punitive damages. We agree.

We recognize that punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900 (Colo.1987); *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988); § 13–21–102, C.R.S. (1987 Repl.Vol. 6A). In addition, under the exemplary damages statute as then in effect, *see* Colo.Sess.Laws 1986, ch. 106, § 13–21–102(1)(a) at 675, it was necessary for McCrea & Co. to establish that Dwyer's conduct was willful and wanton in the respect that Dwyer acted purposely and recklessly without regard to the rights of McCrea & Co. and with the realization that McCrea & Co. would be injured. *See*

§ 13–21–102(1)(b), C.R.S. (1987 Repl.Vol. 6A).

Here, the jury could reasonably find beyond a reasonable doubt that, after entering into the joint venture agreement and acquainting himself with the requirements for conducting auctions, Dwyer determined to secure the benefits of the PSC contract for himself. To that end, and after allowing McCrea & Co. to make significant improvements to the Kalamath property for conducting an auction business, he bid the PSC contract without advising McCrea & Co. he intended to do so. He also evicted McCrea & Co. from the Kalamath property in order to eliminate McCrea & Co. as a competitor. We conclude that this type of tortious conduct by one joint venturer against the other is sufficient to satisfy the statutory requirements under either McCrea & Co.'s fraud or business interference claims. Therefore, the trial court properly submitted this issue to the jury in the first instance and erred in thereafter setting aside the award of punitive damages.

We do not consider Dwyer's contention that the trial court erred in admitting evidence of the gross value of Dwyer's assets relative to the punitive damage claim because this argument is made for the first time on appeal. *See* CRE 103(a)(1). Dwyer's objection in the trial court was limited to relevancy and pertained only to assets acquired after the business relationship between the parties was terminated.

### VII.

Finally, McCrea & Co. contends that the trial court erred in ordering a new trial unless it agreed to a reduction in the award of actual damages. We disagree.

A trial court may grant a new trial under C.R.C.P. 59 or, in the alternative, deny a new trial on the condition that the plaintiff agrees to a reduction in the amount of the damages found by the court to be excessive. This option is permissible in cases in which the trial court considers the damages manifestly excessive, C.R.C.P. 59(d)(5), but not a product of prejudice or passion. *See Burns v. McGraw–Hill Broadcasting Co.,*

659 P.2d 1351 (Colo.1983); *Leo Payne Pontiac, Inc. v. Ratliff,* 178 Colo. 361, 497 P.2d 997 (1972).

Here, we agree with the trial court that McCrea & Co. did not present competent evidence to prove that the damages for fraud and those for breach of the contract were, in fact, separate and distinct. In addition, McCrea & Co. did not present competent evidence to establish that its damages for business interference were greater than or different from the lost profits occasioned by the breach of contract. Therefore, we conclude that the trial court did not err in reducing the damages award.

The judgment is affirmed in all respects except for that part setting aside the award for punitive damages. The cause is remanded with directions to reinstate that award.

REED and DUBOFSKY, JJ., concur.