[Civ. No. 68686. Second Dist., Div. Six. Oct. 30, 1984.]

LISA GRANBERRY et al., Plaintiffs and Appellants, v.
ISLAY INVESTMENTS et al., Defendants and Respondents.

**COUNSEL**

David H. Schwartz, Hill, Schwartz, Stenson & Boutin, Ernest L. Graves and Willard Hastings, Jr., for Plaintiffs and Appellants.

Arlo Smith, District Attorney (San Francisco), David C. Moon and Steven J. Castleman, Assistant District Attorneys, Richard A. Elbrecht, A. Paul Griebel and Roger Dickinson as Amici Curiae on behalf of Plaintiffs and Appellants.

Antonio R. Romasanta, Frances E. Komoroske, Goux, Romasanta & Cappello, Marcus Crahan, Jr., and Crahan, Scott, Jarvelena & Ver Halen for Defendants and Respondents.

**OPINION**

**GILBERT, J.**—Here we attempt to make sense out of Civil Code section 1950.5.[1]

Defendant Islay Investments (Islay) is a partnership that owns and rents apartments. Codefendant Marvin Trevillian is Islay's managing partner. Plaintiffs are tenants of Islay, who have been certified as a class under Code of Civil Procedure section 382. They contend that Islay's rental practices violate Civil Code section 1950.5,[2] and appeal from a partial summary judgment entered in favor of Islay.

We hold that the trial court erred in granting summary judgment to Islay because the court misinterpreted the statute.

## FACTS

Islay rents each of its individual apartments for an initial term of 31 days.[3] After the expiration of this term, the tenant may continue to rent the apartment daily, weekly, biweekly or monthly, or may terminate the tenancy without further obligation. If the tenant chooses to continue to rent the apartment monthly after the initial term, the tenant is charged a lower rent for the subsequent months.[4]

---

[1] The same has been said of our previous opinion prompting us to grant a rehearing. While we hope this present effort will not trigger this same response, we don't hold our breath.

[2] Civil Code section 1950.5 in pertinent part provides as follows: "(a) The provisions of this section shall apply to security for a rental agreement for residential property, that is, property used as the dwelling of the tenant.

"(b) As used in this section, 'security' means any payment, fee, deposit or charge, including, but not limited to, an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following:

"(1) The compensation of a landlord for a tenant's default in the payment of rent.

"(2) The repair of damages to the premises caused by the tenant.

"(3) The cleaning of the premises upon termination of the tenancy.

"(c) A landlord may not demand or receive security, however denominated, in an amount or value in excess of an amount equal to two months' rent, in the case of unfurnished residential property, and an amount equal to three months' rent in the case of furnished residential property, in addition to any rent for the first month paid on or before initial occupancy. . . ."

Other provisions in this section include a limitation on the landlord who may use the security only in such amounts as are reasonably necessary to remedy tenant defaults in the rent or to repair damages caused by the tenant. Also, a bad faith retention of the security by the landlord can subject him to damages not to exceed $200 in addition to any actual damages. "Nonrefundable" security is prohibited.

[3] For purposes of our discussion we refer to this period as the first month's rent.

[4] The differential between the first and subsequent months varies with the apartment. With respect to the plaintiffs, the first month's rent is approximately $100 more than the rent for subsequent months.

Plaintiffs challenge this practice as violative of Code of Civil Procedure section 1950.5. After initial skirmishes at the pleading stage, when demurrers were sustained to plaintiffs' first amended complaint, and Islay's first motion for summary judgment was denied, plaintiffs filed their second amended complaint which is comprised of five causes of action.

The first two causes of action seek declaratory relief and a determination that the extra amount charged by Islay for the first month's rent is a security prohibited by Civil Code section 1950.5. The additional causes of action seek injunctive relief, an accounting, and damages. Plaintiffs and Islay each brought motions for summary judgment, or in the alternative, for determination of issues without substantial controversy as to the first two causes of action, respectively.

The trial court granted Islay's motion for summary judgment, finding that the "first month's rental charged by defendant Islay was 'rent' in fact as well as in name." Since the remaining causes of action were dependent on the first two causes of action, the trial court then granted Islay's motion for judgment on the pleadings as to those causes of action.

## HISTORICAL BACKGROUND

1970 saw the enactment of Civil Code section 1950.5[5] which gave tenants a right to recover payments to landlords when the primary function of such payments was to secure the performance of a rental agreement. Immediately prior to the enactment of section 1950.5 Islay had been charging its tenants a "refundable security deposit" in addition to the first month's rent. Tenants had to remain tenants for a specified time in order to qualify for this refund. Upon the enactment of section 1950.5, Islay converted its so-called "refundable security deposit" to a "non-refundable cleaning fee" in order to avoid disputes in litigation over refunds. Islay determined the amount of this cleaning fee by whatever the market would bear.

In *Bauman* v. *Islay Investments* (1973) 30 Cal.App.3d 752 [106 Cal.Rptr. 889], the appellate court reversed the trial court's sustaining of a demurrer without leave to amend, and held that Islay's nonrefundable cleaning fee could entitle tenant plaintiffs to relief under Civil Code 1950.5. Islay thereafter charged a fixed amount for the first month's rent for each new tenancy. When the tenant elected to continue the tenancy on a monthly basis, the tenant was charged lower rent for subsequent months. That portion of the first month's rent which was greater than the amount charged for subsequent months was determined again by what the market would bear.

---

[5]When enacted, the statute was mistakenly numbered 1951.

The Legislature made the next move. It amended Civil Code section 1950.5 to define the term "security" to include any payment for any purpose so that "security" was no longer related to the purpose for which the front-end payment was taken.

The trial court had to determine whether the extra payment Islay required of its tenants for the first month's rent was in fact rent or a disguised security. There were available to the judge the results of protracted discovery consisting of several depositions, interrogatories, requests for production of documents, requests for admissions and declarations. We nevertheless reverse because the trial court defined "security" too narrowly.

## DISCUSSION

The original version of Civil Code section 1950.5 defined security as "any payment or deposit of money the primary function of which is to secure the performance of a rental agreement or any part of such an agreement, . . . made to secure the execution of a rental agreement . . . ." In the current version of section 1950.5, the definition of "security" is no longer dependent on its primary function. The legislative counsel's digest in its description of the amendment to the statute suggested that even an advance payment of rent could be a security. Subdivision (b) defines a "security" as *any* payment, fee, deposit or charge which includes, but is *not limited to,* an advance payment of rent, used for any purpose; including, but not limited to: "(1) The compensation of a landlord for a tenant's default in the payment of rent.

"(2) The repair of damages to the premises caused by the tenant.

"(3) The cleaning of the premises upon termination of the tenancy."

These common examples of the purposes for obtaining a security do not comprise the exclusive definition of what constitutes a security under the statute.

To further confound anyone trying to make sense out of the statute, it might appear from subdivision (e) that function is in fact tied to the definition of "security." That subdivision is related to subdivision (b) because it states that "[t]he landlord may claim of the security only such amounts as are reasonably necessary to remedy tenant defaults in the payment of rent, to repair damages to the premises caused by the tenant, exclusive of ordinary wear and tear, or to clean such premises, if necessary, upon termination of the tenancy." Subdivision (e) in fact only states when the landlord may forfeit the security.

■ A literal reading of subdivision (b), however, reveals a conundrum. Included in the definition of a security is "[A]n advance payment of rent, used or to be used for any purpose, . . ." Therefore, a legitimate advance payment of rent would be a security. Such an absurd result would effectively put most landlords out of business and render tenants homeless. This is not the first statute to teeter on the brink of unintelligibility.

■ "One of the cardinal rules of construction requires that words be given such interpretation as will promote rather than defeat the *general purpose and policy* of the law. [Citation.] ■ A statute should be interpreted so as to produce a result that is reasonable. [Citation.] If two constructions are possible, that which leads to the more reasonable result should be adopted." (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) ■ *Alford* also states that courts have to look for the context of the law, and where uncertainty exists give consideration to consequences that will flow from a particular interpretation. (*Ibid.*)

■ The words of a statute will not be literally construed if this would cause an absurd result, or if it would fail to give effect to the manifest purposes of the statute in light of its legislative history. (*Golden* v. *City of Oakland* (1975) 49 Cal.App.3d 284, 288 [122 Cal.Rptr. 400].) ■ " '[T]hat construction is favored which would defeat subterfuges, expediencies, or evasions employed to continue the mischief sought to be remedied by the statute or to defeat compliance with its terms, or any attempt to accomplish by indirection what the statute forbids.' " (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463] (quoting 50 Am.Jur., Statutes, § 361).)

■ Obviously, "security" cannot mean the same thing as rent. That a landlord chooses to call a payment "rent" however, does not mean that such a payment is in fact rent. Subdivision (c) of the statute specifically states that "[a] landlord may not demand or receive security, however denominated . . . ." Also, under subdivision (c) a landlord may receive in addition to the first month's rent, a security in an amount equal to two or three months' rent, depending upon whether the unit is furnished or not. Therefore legitimate rent is not a security within the meaning of the statute, but a security which masquerades as rent solely because the landlord chooses to call it rent, is still a security.

■ When the trial judge tackled his unenviable chore of deciding whether Islay's rental practices ran afoul of section 1950.5, he apparently misinterpreted the statute (an easy thing to do).

In his statement of decision the trial judge erroneously found in the statute a connection between security and the purpose for which that security was

intended to be used, even though the statute specifically excludes purpose or function from the definition of a security. The trial judge defined security as a payment for "something in the future not yet earned by the lessor or damage not yet sustained by him."[6] The statute simply does not define security in this way. A payment "used for any purpose" as stated in the statute, does not mean "a payment for something in the future." In addition, "a payment for something in the future" could include an advance payment of legitimate rent.

█ The sweeping definition of security contained in the statute makes it an elusive concept. The trier of fact may face a difficult task in trying to distinguish between a security and rent. Islay and plaintiffs each offer their own definition of either security or rent in the context of the statute. Their critiques of each other's definition are more persuasive than their definitions. Islay borrows its definition from Professor Coskran (see fn. 6) and argues that a security can only be used by the landlord for those purposes set forth in the examples in subdivisions (b) and (e) of Civil Code section 1950.5. Any other payment, it argues, is not a security unless it is shown to have been taken to secure the execution of a lease. As plaintiffs point out, this constricted view ties the definition of security to purpose, which is what the statute disallows. This narrow view of a security would permit a landlord to escape the provisions of the statute by merely calling a payment rent so that it does not fall within the limited examples contained in the statute.

Plaintiffs on the other hand, argue that the statute can only be saved from absurdity by excluding ordinary, usual or customary rent from the definition of a security. This, they argue, sets rent apart from security and gives the statute meaning. Islay contends that such a definition is a mere invention because the statute does not discuss or define these terms.

One could say that the distinction between a security and rent has something in common with one view of obscenity. Though hard to define, one knows it when he sees it. On closer examination however, security and rent are susceptible of a more concrete definition within the statute. A security is what the statute says it is, but we exclude from that definition legitimate rent. The term "legitimate rent" may appear a tautology, but it is important to distinguish "legitimate" rent from what a landlord calls rent when he wishes to disguise a payment which is really a security. █ Rent is the consideration paid by the tenant for the use, possession and enjoyment of the demised premises. (*Silveira* v. *Ohm* (1949) 33 Cal.2d 272 [201 P.2d 387].)

---

[6]This definition is suggested by Professor William G. Coskran, who in his article *Tenant Front End Payments* (1978) 12 Loyola L.A.L. Rev. 37, 62-63, tied the definition of a security to the nonexclusive examples of a security set forth in subdivision (b).

This approach does not, as the parties contend, launch the trier of fact on a sea of uncertainty with a circular definition that provides no guidance. The trier of fact must look to various factors including the facts and circumstances of each particular case in determining whether a payment is a security or legitimate rent. The definitions supplied by Islay and plaintiffs while not sufficient as definitions of the terms, are useful as factors in determining whether a payment is rent or a security.

The trial court must look at a payment the landlord designates as rent to determine whether it is usual or customary within the context of the particular case. For example, seasonal rents in resort areas might change during certain times of the year so that the usual or customary rent paid during nine months of the year might be different than the rent charged during the remaining three months of the year.

If the disputed payment seems to more nearly fit the examples set forth in subdivision (b) of the statute, then that would be a factor indicating the payment is a security rather than rent, although the examples set forth in subdivision (b) are not exclusive.

Historical practices of the landlord may provide clues as to what the payment is. Contrary to Islay's contention, an inquiry into its past practices does not serve to call into question its character in determining credibility under Evidence Code section 786. Rather, it gives the trier of fact insight into what a disputed payment in fact is. If in the past Islay levied charges for security deposits in much the same fashion that it charges the extra payment for the first month's rent now, and other factors have not significantly changed, this would be some evidence that the payment is a security rather than rent.

Although this case was decided by way of summary judgment, we can envision cases where credibility of witnesses is a factor the trier of fact must consider in making its ultimate decision. Plaintiffs contend there is no issue of credibility of witnesses in determining whether a payment is rent or a security, because the intended purpose of a payment is irrelevant to the definition of a security. The trier of fact however, in some cases may have to consider the justification for the payment to determine whether it is legitimate rent. A landlord's stated reasons for its rental practices may be compared to inferences drawn from the evidence that either support or refute those reasons. A motion for summary judgment may be a good vehicle to resolve these issues, but credibility of witnesses may be difficult to assess from lifeless declarations. Often demeanor of witnesses, and responses to cross-examination are better guides in deciding such issues.

In the instant case, Islay argues that since rent is charged in a specified sum for the initial 31-day term, if a tenant vacates the premises after that initial term, no security deposit exists. Neither is there a security deposit if the tenant pays rent on a daily or weekly basis for any subsequent term since the rent will then be higher than the initial term. Islay argues that if its higher rent for the first month is treated as a security when a tenant elects to continue the term for subsequent months, then the tenant is in effect determining whether or not his landlord is in violation of Civil Code section 1950.5. Islay also argues that its unique form of rental agreement is motivated by its desire to induce tenants to hold over their units at a lower monthly rate. It argues that by continuing the tenancy on a monthly basis, the tenant in fact amortizes the higher rental payment for the first month over a period of months, which in effect means the tenant pays less rent the longer the tenancy.

Although we are not prepared to say here that the extra portion of rent charged during the first month of a month to month tenancy is a security, inferences may be drawn from the evidence that directly contradict Islay's assertions. The statute tells us that merely calling an item "rent" does not make it so.

Historically, Islay charged a security deposit in much the same manner that it now currently charges tenants a higher amount for the first month's rent when those tenants elect to rent on a month to month tenancy. Rental increases for Islay apartments are based on increases in the consumer price index. Islay's rent schedules show that rent increases were applied only to the second month's rent, and not the portion of "extra rent" charged for the first month. While Islay professes to base its rental practices on the theory that it will encourage and secure longer term tenancies in a popular resort area, an employee of the City of Santa Barbara Housing Authority estimated the vacancy rate where Islay's apartments are located to be less than 1 percent. Although it may be true as Islay argues, that a low vacancy rate does not necessarily mean a low turnover rate, it could be concluded that Islay's method to induce holdovers is unwarranted here.

Islay argues its rental practices are unique because of the Santa Barbara area. If most of Islay's tenants rent only for a month or less, there may be some justification for Islay to offer a carrot to induce a longer tenancy. On the other hand, if most tenants stay for longer periods, then this unique rental scheme may be a device to collect a security. We do not suggest that Islay should be punished for success, but the trial court should try to determine, if possible, whether Islay's rental scheme changed transient tenants into long term tenants.

We remand to the trial court for reconsideration in accordance with the views expressed in our decision. By looking at the statute as we suggest, the trial court may still be able to decide this case on the declarations submitted in connection with the summary judgment motion. We remind the court however, of Code of Civil Procedure section 437c, subdivision (c) which provides that when the court is deciding from the evidence before it whether to grant a motion for summary judgment, ". . . summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (*Hepp* v. *Lockheed-California Company* (1978) 86 Cal.App.3d 714, 717-718 [150 Cal.Rptr. 408].) We leave it to the trial court to decide whether there are conflicting inferences to be drawn from the evidence to establish that material issues of fact are yet to be decided in determining whether Islay's "rent" is but a disguised security.

The judgment of dismissal of plaintiffs' causes of action is reversed.[7]

Stone, P. J., and Abbe, J., concurred.

Petitions for a rehearing were denied November 27, 1984, and appellants' petition for a hearing by the Supreme Court was denied January 3, 1985.

---

[7]We also leave for the trial court's determination, remaining issues, if any, concerning certification of plaintiffs as a class.